# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**     :

    **v.**     :     **CRIMINAL NO. 19-3105**

**TROY REESE**     :

## ORDER

AND NOW, this ___ day of _____, 2019, in consideration of the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to § 2255, and of the government's response, the Court FINDS that the motion is without merit and is therefore DISMISSED.

BY THE COURT:

_____
HONORABLE R. BARCLAY SURRICK
*Judge, United States District Court*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-631 |
| TROY REESE | : | |

### GOVERNMENT'S RESPONSE TO PETITIONER TROY REESE'S MOTION TO VACATE, SET ASIDE, OR CORRECT HIS CONVICTION PURSUANT TO 28 U.S.C. § 2255

The United States of America, by its attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, and Josh A. Davison, Assistant United States Attorney, respectfully submits this response in opposition to defendant Troy Reese's petition pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. For the reasons explained below, the motion should be summarily denied.

## I. PROCEDURAL HISTORY

On December 7, 2017, Troy Reese was charged by indictment with one count of child enticement, in violation of Title 18 U.S.C. § 2422(b). On November 29, 2018, the defendant pleaded guilty to a one count Superseding Information charging one count of traveling interstate for the purpose of engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b). The plea was entered pursuant to a plea agreement under Federal Criminal Rule of Criminal Procedure 11(c)(1)(C), in which the parties understood that if the plea were accepted by the Court, the defendant would be sentenced within the prescribed guideline range of 70-87 months' imprisonment. In exchange for the defendant's plea of guilty to the Superseding Information, the government agreed to dismiss the indicted charge of child enticement, which carried a

statutory mandatory minimum sentence of 120 months' imprisonment. Thus, by signing the plea agreement with regard to the Superseding Information, the defendant was given the benefit of a sentence below what otherwise would have been the statutory mandatory minimum sentence. During his plea colloquy, the defendant admitted that between July 20 and July 21, 2017, he engaged in an online chat with a person he believed to be a 13 year-old girl and traveled from New Jersey to Conshohocken, Pennsylvania with the intent to have sex with her.

Reese further agreed that, with very limited exceptions, he would neither appeal nor present any collateral challenge to his conviction or sentence. Specifically, the appellate waiver in the plea agreement stated:

> If the Court accepts the recommendation of the parties and imposes the sentence stated in paragraph four of this agreement, the parties agree that neither will file any appeal of the conviction and sentence in this case. Further, the defendant agrees that if the Court imposes the recommended sentence he voluntarily and expressly waives all rights to collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution. However, the defendant retains the right to file a claim, if otherwise allowed by law, that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance.
>
> If the Court does not accept the recommendation of the parties to impose the sentence stated in paragraph four of this agreement, and the defendant nevertheless decides to enter a guilty plea, without objection by the government, then the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.
>
> a.    Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

> b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:
>
>> (1) that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 5 above;
>>
>> (2) challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;
>>
>> (3) challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and
>>
>> (4) that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.
>
> If the defendant does appeal or seek collateral relief pursuant to this subparagraph, no issue may be presented by the defendant in such a proceeding other than those described in this subparagraph.

Plea Agreement ¶¶ 16, 17. At the conclusion of the change of plea hearing, this Court ordered a presentence report.

During the period between the plea hearing and the sentencing hearing, defense counsel, Rossman Thompson, moved to withdraw as counsel and his request was granted due to a potential conflict of interest. New counsel, William Brennan, was appointed for sentencing.

On June 14, 2019, the Court sentenced Reese to a term of 72 months' imprisonment, 10 years' supervised release, and a special assessment of $100. Reese did not file a notice of appeal and his conviction became final on June 29, 2019.

On July 18, 2019, the petitioner filed a motion seeking relief under 28 U.S.C. § 2255. In his *pro se* motion to vacate the conviction and sentence under § 2255, the petitioner has asserted

that his counsel at the time of the plea was ineffective, and also has alleged a variety of other grounds for relief. For the reasons below, these claims have no merit.

## II. STATEMENT OF FACTS

On July 20, 2017, a detective with the Borough of Conshohocken took note of two advertisements in the personals section of Craigslist, an online bulletin board.

The target posted the following ad: "I'm a school teacher wanna fuck a hot girl (Blackwood)." The ad stated "I wanna fuck a young thin white girl my wife is gone for the weekend we will meet in public and back to my place I'm a older that likes younger women email me ur pic and number" This post ID was listed as 6221492902.

The detective located an additional ad titled: "Who's young and wanna fuck a older man –m4w (Sicklerville)." This ad stated: "Who's young white thin no names needed I'm keeping this discreet. Who wants a older guy fuck them wild email me with a pic ride me all night long. Tiny breast huge turn Let me fuck sisters or mom and daughter." This post ID was listed as 6210930837.

Posing as a 13 year-old girl, the detective responded to the target's posts on Craigslist. The detective, acting in an undercover capacity, and the unknown male, using telephone number 856-264-2014, proceeded to have sexually charged chats on July 20 and 21, 2017 and arranged to meet on July 21, 2017 outside of the purported 13 year-old-girl's residence in Conshohocken, Pennsylvania.

By way of an online search of Facebook, law enforcement ascertained that 856-264-2014 was associated with Troy Reese of Erial, New Jersey. A check of New Jersey Department of

Transportation records for Troy Reese confirmed that the same male was associated with the Facebook account. Law enforcement learned that Reese had an address of 107 Brighton Court, Sicklerville, NJ 08081 and a 2008 Chevrolet Impala (NJ B53HCF) registered to him.

In the chats, the undercover specifically represented himself to be a 13 year-old girl and Reese acknowledged her age by stating that the Craigslist platform is "supposed to be 18 and up." Nevertheless, Reese continued to engage in this chat with whom he thought was a 13 year-old. The undercover responded to Reese's request to send a photograph of her, and the undercover provided an image of a girl in an amusement park. Reese indicated that he could get in trouble for meeting up with her, but suggested multiple times that they get together. The meet was scheduled for the following day, July 21st. Reese offered to buy her lingerie for the occasion and requested her size. Reese suggested they could meet in the woods outside of the residence.

On July 21, 2017, Reese texted the undercover and resumed the chat. Reese noted that he was 15 years older than her. He attached photographs of bras and underwear he was bringing her. Notably, he texted the following: "Babe I'm not going to lie its ur first time and I'm serious about u I might cum inside u. If u do have a child, u can not say it's from me. I will see the child when ur 16 and u can move in with me."

Reese's last communication to the undercover was at 6:06 PM on July 21, 2017 when he reported he was fifteen minutes away from the 13 year-old's purported residence at 309 Washington Street in Conshohocken. At 6:02 P.M., the police observed a white Impala (NJ B53HCF) with a white male matching the description of Troy Reese traveling east on Washington Street. The white Impala turned to go to the rear of 309 Washington Street.

5

Detectives located the white Impala parked behind 309 Washington Street and observed Reese coming out of a wooded area and walk back towards the white Impala. As detectives observed the white Chevrolet Impala pull out, the vehicle was stopped on Cherry Street next to 309 Washington Street by law enforcement and Reese was taken into custody. Upon the stop, a detective dialed phone number 856-264-2014 and observed the cell phone in the center console light up and vibrate. He could see a blanket on the front passenger seat and a Victoria Secret bag on the passenger floor.

When Reese was taken into custody, he asked what this was about. A detective stated "you know what this is about" and Reese stated "Oh, the sexting thing."

Reese provided a post-Miranda written statement admitting to talking to whom he believed was a 13 year-old female with the intent to have sex with her. Reese provided written consent to search his Samsung Galaxy cell phone and Chevrolet Impala.

Located inside the Chevrolet Impala was a Victoria Secret bag that contained women's lingerie and a blanket. The women's lingerie in Reese's car appeared to match the photograph of lingerie he sent to the undercover detective. The lingerie matched the sizes (small and 32B) provided to Reese during the chats.

The forensic examination recovered the string of texts to the undercover on Reese's Samsung Galaxy cell phone.

### III. ARGUMENT

#### A. Defendant Waived his Right to Appeal or Collaterally Attack his Sentence

Reese alleges a number of claims in his petition that he expressly waived pursuant to the

plea agreement in this case. Specifically, Reese argues entrapment, jurisdiction, "blind justice," cruel and unusual punishment, failure to receive a downward departure, and prosecutorial misconduct as grounds for relief under § 2255. All of these claims are precluded by the appellate waiver in Reese's plea agreement and should be denied.

The plea agreement permits an appeal solely on the grounds that a sentence exceeded the statutory maximum on any count, that the court imposed an upward departure in the guideline calculation, that the court imposed an unreasonable sentence above the guideline range, or that the attorney who represented the defendant provided constitutionally ineffective assistance of counsel. As explained in this response, none of those circumstances exist here. Moreover, Reese expressly waived the right to collaterally attack his sentence pursuant to § 2255. (Paragraph 17 of the Plea Agreement).

Because the waiver was entered knowingly and voluntarily and no exception applies, it must be enforced in the absence of a miscarriage of justice. In United States v. Khattak, 273 F.3d 557 (3d Cir. 2001), the Third Circuit held that waivers of appeal are enforceable, but observed that "[t]here may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver." Id. at 562. In United States v. Gwinnett, 483 F.3d 200 (3d Cir. 2007), the Third Circuit clarified that, contrary to a suggestion in Khattak, an appellate waiver does not operate to divest the Court of jurisdiction. Rather, where the defendant has entered a knowing and voluntary waiver, Gwinnett explained, the Court will enforce the waiver and affirm the judgment, unless doing so would work a miscarriage of justice.

There was no miscarriage of justice in this case. The Third Circuit in Khattak did not provide a definitive list of situations which amount to a "miscarriage of justice." It observed

7

that other appellate courts have suggested that only extraordinary situations would suffice. See, e.g., United States v. Brown, 232 F.3d 399, 403 (4th Cir. 2000) (there may be a miscarriage of justice if the sentence was "(1) imposed in excess of the maximum penalty provided by law or (2) based on a constitutionally impermissible factor such as race."); United States v. Joiner, 183 F.3d 635, 645 (7th Cir. 1999) (there may be a miscarriage of justice if the plea agreement was the product of ineffective assistance of counsel). Khattak embraced the view of the First Circuit, that a reviewing court should evaluate appellate waivers case-by-case, considering the error claimed by the defendant and such factors as "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." 273 F.3d at 563 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

It is apparent that the "miscarriage of justice" exception is quite narrow. It "will be applied sparingly and without undue generosity," United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting Teeter, 257 F.3d at 26), only where "manifest injustice" would result by enforcing the appellate waiver, Gwinnett, 483 F.3d at 206. Simply because an issue is meritorious is not sufficient. Adopting the view of other Circuits, the Third Circuit stated in Khattak:

> [B]y waiving the right to appeal, a defendant necessarily waives
> the opportunity to challenge the sentence imposed, regardless of
> the merits. As the Court of Appeals for the Eleventh Circuit
> explained:
>
>> A waiver of the right to appeal includes a waiver of
>> the right to appeal difficult or debatable legal
>> issues - indeed, it includes a waiver of the right to

8

> appeal blatant error. Waiver would be nearly
> meaningless if it included only those appeals that
> border on the frivolous . . . . While it may appear
> unjust to allow criminal defendants to bargain away
> meritorious appeals, such is the necessary
> consequence of a system in which the right to
> appeal may be freely traded.
>
> [United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999)];
> see also United States v. Wenger, 58 F.3d 280, 282 (7th Cir. 1995)
> ("Defendants who appeal from sentences following plea
> agreements always point to unanticipated and unwelcome
> developments. . . . To say that a waiver of appeal is effective if and
> only if the defendant lacks grounds . . . is to say that waivers will
> not be honored.").

Khattak, 273 F.3d at 561-62.

Notably, the appellate waiver precludes ordinary claims of sentencing error. See Castro, 704 F.3d at 141-42 ("It appears instead that a district court's arguably erroneous calculation of a guideline range 'is precisely the kind of "garden variety" claim of error contemplated by [an] appellate waiver.'") (quoting Sotirion v. United States, 617 F.3d 27, 38 (1st Cir. 2010); United States v. Lockett, 406 F.3d 207, 212-14 (3d Cir. 2005) (meritorious sentencing argument under Booker is not a basis for the defendant to evade his appellate waiver); United States v. Jackson, 523 F.3d 234, 244 (3d Cir. 2008) ("it will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice.");[1] United States v. Banks, 743 F.3d 56, 58-59 (3d Cir. 2014) (where both

---

[1] In *Jackson*, the Court rested its view in part on the fact that the Supreme Court, in *Gall v. United States*, 552 U.S. 38 (2007), made clear that sentencing decisions of a district court must be afforded considerable deference on appeal; thus, it is difficult to conceive of a case in which such a discretionary decision would cause a miscarriage of justice. In *Jackson*, where the defendant only sought to appeal the reasonableness of his sentence, the Third Circuit concluded that the "case obviously does not present the 'unusual circumstances' we contemplated in *Khattak*." *Jackson*, 523 F.3d at 244.

9

prison terms were within the ranges specified in the plea agreement, and the entire sentence was well below the statutory maximum, there is no foundation to conclude that the sentence constituted a miscarriage of justice permitting abrogation of the appellate waiver); United States v. Perez, 514 F.3d 296, 298 (3d Cir. 2007) (enforcing waiver of right to appeal restitution order, as that was a term of sentencing regarding which the defendant waived the right to appeal).

To date, the Third Circuit has identified only very limited circumstances as presenting a miscarriage of justice that permit a collateral challenge to proceed despite the waiver. The Court has stated that an appellate waiver may not be enforced if the defendant should have been permitted to withdraw his guilty plea, United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005); if the defendant did not understand the plea agreement itself due to ineffective assistance of counsel, United States v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007); if counsel was ineffective in failing to timely file an appeal raising an issue explicitly exempted from the appellate waiver provision, *id.*; or if the government breached its own obligations under the plea agreement, United States v. Schwartz, 511 F.3d 403, 405 (3d Cir. 2008). None of those circumstances exists in this case.

The defendant has not made a claim that his attorney's ineffectiveness prevented him from understanding the plea agreement or that his attorney was ineffective in negotiating the plea agreement. All other claims of ineffectiveness, such as those presented by the defendant in this case, are subject to the waiver. For instance, in Mason v. United States, 211 F.3d 1065 (7th Cir. 2000), the court held that a defendant's ineffective assistance claim merely challenging his attorney's performance at sentencing was subject to the waiver. As the Fifth Circuit explained elsewhere, "the opposite result would render waivers of appeal meaningless. If all ineffective

10

assistance of counsel claims were immune from waiver, any complaint about the process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded." United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

As the Seventh Circuit has held, "waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." Jones v. United States, 167 F.3d 1142 (7th Cir. 1999). Accord United States v. White, 307 F.3d 336, 344 (5th Cir. 2002); Davila v. United States, 258 F.3d 448, 451 (6th Cir. 2001); United States v. Cockerham, 237 F.3d 1179, 1182 (10th Cir. 2001); DeRoo v. United States, 223 F.3d 919, 924 (8th Cir. 2000); United States v. Djelevic, 161 F.3d 104, 107 (2nd Cir. 1998).

The government cannot conceive of an issue in this case falling within the narrow miscarriage of justice exception. The defendant admitted the charges, admitted the underlying facts supporting the charges, plainly and clearly advised the Court that he understood the rights he was giving up, and pled guilty after an extensive colloquy. Though the defendant may be dissatisfied at his ultimate sentence for the crimes he committed, nothing that occurred in his case qualifies as a miscarriage of justice. The Court should enforce the appellate waiver in the plea agreement and deny the defendant's petition as to this claim.

### B. Alleged Ineffective Assistance of Counsel

Relief under § 2255 is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v.

11

Gordon, 979 F.Supp. 337, 339 (E.D.Pa.1997) (citing Hill v. United States, 368 U.S. 424, 428 (1962)).

Reese contends that his attorney was ineffective for withholding exculpatory evidence from him. Ineffective assistance is one of the few claims Reese is permitted to bring despite the appellate waiver.

A two-part test is utilized to assess an ineffective assistance of counsel claim. See Strickland v. Washington, 466 U.S. 668 (1984). The first prong requires the petitioner to demonstrate that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The deficiency prong requires proof that counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. Id. at 688. The assessment begins with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the court's scrutiny of counsel's performance is to be highly deferential. Id. at 689. The assessment of counsel's performance must be made without using the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable. Id. at 690. The petitioner has the burden of overcoming the strong presumption that counsel was effective. Id. at 689.

If deficient performance is established, the second prong of the Strickland analysis requires a showing that counsel's deficient performance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To satisfy this test, a petitioner must demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the

result of the proceeding would have been different. Id. at 694. The assessment cannot be based upon generalities but instead must be based upon a demonstration of how the "specific errors of counsel undermined the reliability of the [finding] of guilt." Flamer v. State of Delaware, 68 F.3d 710, 729 (3d Cir.1995) (quoting United States v. Cronic, 466 U.S. 648, 659 n. 26 (1984).

If a petitioner is convicted pursuant to a guilty plea, he is eligible for relief under § 2255 if he can demonstrate that the plea was not entered into knowingly and voluntarily. Hill v. Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366 (1985). If a defendant enters a guilty plea that was not knowing and voluntary because he was denied his Sixth Amendment right to effective assistance of counsel, that ineffective assistance of counsel claim can serve as the basis for relief under § 2255. Id. at 59. To prevail, the petitioner must show that "but for counsel's errors," he would have opted to go to trial rather than entering the plea. Id. at 59, 106. Errors of an attorney during plea negotiations must be such that would "undermine confidence in the outcome." United States v. Gray, 878 F.2d 702, 710 (3d Cir.1989) (quoting Strickland, 466 U.S. at 694. Counsel's decisions prior to a guilty plea can also amount to ineffectiveness and cause prejudice. United States v. Kauffman, 109 F.3d 186 (3d Cir.1997).

The petitioner argues that his counsel was ineffective on two grounds. First, Reese asserts that counsel "withheld exculpatory evidence." Petitioner's Motion P.5. Second, he alleges that the guideline calculation was mistaken. Id.

Even without the benefit of any fact finding on the merits of petitioner's motion and assuming *arguendo* that prior counsel's representation of Reese was ineffective, the petitioner cannot demonstrate prejudice as he is required to do under Strickland. Reese was sentenced to a term of imprisonment below the statutory maximum for the charge he faced under the indictment

for child enticement. Under the superseding information and pursuant to his plea agreement, Reese ultimately received a sentence at the low end of the sentencing range permitted by his plea agreement. Even if prior counsel was ineffective, the petitioner has failed to demonstrate that he would have proceeded to trial but for counsel's errors. Indeed, by pleading guilty, the defendant received a sentence at the low end of his potential exposure. Such would have not been the case if he had elected to proceed to trial. As described below, the evidence of the defendant's guilt was overwhelming.

Neither of Reese's claims cross a threshold level necessary to conclude that his plea of guilty was not knowing and voluntary. Hill v. Lockhart, 474 U.S. at 56. In his motion, Reese never claims he would have alternatively opted to proceed to trial. Thus, even if counsel was ineffective in certain aspects, Reese has failed to demonstrate any prejudice that befell him from those errors.

The government will now examine each one of the defendant's ineffective assistance of counsel claims.

1. "Withholding of Exculpatory Evidence"

Reese appears to be alleging that his counsel failed to bring forth evidence that the online platform Reese used to commence his offense, the adult section on Craigslist, is only available to those 18 years of age and older. Presumably, Reese is contending that this evidence would have tended to exonerate him at trial, since he was charged and convicted of traveling interstate with the intent to have illicit sexual conduct with a minor.

A clear review of the statement of facts supporting the defendant's plea demonstrates that

the undercover, posing as a minor female, represented to Reese that Reese was communicating with an underage minor female. The undercover clearly stated that "her" age was 13, after Reese remarked that this portion of Craigslist was supposed to be for persons 18 and older. Reese continued to communicate with the person he knew to be 13, not over 18. While Reese may have opted to proceed to trial and introduce evidence that Craigslist requires users to self-report that they are over 18 years-old on this forum, he has failed to demonstrate prejudice. He cannot show that the outcome would have been different if he had proceeded to trial. The evidence of his guilt was overwhelming. Furthermore, Reese has not demonstrated how his counsel, Rossman Thompson, "withheld exculpatory evidence" as he alleges in his motion. Id. P.5. In fact, Reese's own statements in the chats (contained in the statement of facts in support of his plea) regarding Reese's understanding that Craigslist's guidelines for the forum precluded underage participants, underscore that such evidence was not withheld, but known and available to him. Reese has failed to demonstrate either that his counsel was ineffective or that he was prejudiced. Reese's petition should be denied as to this ground.

    2. <u>Sentencing Guideline Level</u>

Reese next asserts that his counsel was ineffective in failing to object to his offense level being calculated at 27, when it should have only been a 24. Id. at P.5. In fact, Reese's offense level was calculated at a 28 pursuant to the plea agreement. Both parties stipulated to that offense level because it reflected the actual offense of enticement of a minor, as charged in the original indictment. Reese contends that a lower offense level applies to the offense of interstate travel with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b), as charged in the Superseding Information. While Reese is technically correct as the

15

guideline level for the § 2423 offense, the higher offense level, associated with the charge in the original indictment was expressly agreed upon as part of the plea agreement (Paragraph 14(a) of the Plea Agreement). This negotiated plea agreement made it possible for the defendant to be sentenced well under the statutory mandatory minimum of 120 months' imprisonment that would have applied to the indicted charge of enticement of a minor, in violation of 18 U.S.C. § 2422(b). The defendant thereby received a substantial benefit from this stipulation. The notion that the defendant's guideline calculation was to include the offense of enticement, in addition to the offense of conviction, was specifically identified and explained to Reese at the time he entered a plea of guilty. Thus, Reese has failed to articulate how the calculation of his sentencing guideline range was the product of ineffective assistance of counsel. His petition should be denied as to this claim.

The defendant's waiver was knowing and voluntary, and the motion presents no claim, evidencing a miscarriage of justice. Therefore, the government respectfully requests that the Court deny the defendant's petition.

Additionally, because the defendant has failed to make "a substantial showing of the denial of a constitutional right [,]" there is no basis for a certificate of appealability to issue. 28 U.S.C. § 2253(c)(2).

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney


 /s/ Josh A. Davison
Josh A. Davison
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Government's Response to Motion to Vacate under 28 U.S.C. § 2255 has been served this date by first class mail upon:

>Troy Reese, #76368-066
>Federal Detention Center
>P.O. Box 562
>Philadelphia, PA 19106

>/s/ Josh A. Davison
>Josh A. Davison
>Assistant United States Attorney

Date: August 12, 2019